UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **CHERISSE CASAR WILSON,**<br>Plaintiff,<br>**v.**<br>**UNITED STATES OF AMERICA, et al.,**<br>Defendants. | **2:23-CV-10528-TGB-DRG**<br>HON. TERRENCE G. BERG<br>**ORDER DENYING DEFENDANT UNITED STATES'S MOTION TO PRECLUDE THIRD-PARTY DAMAGES (ECF NO. 76)** |

A United States Postal Service ("USPS") van rear-ended Cherisse Wilson's rented SUV as she was turning right onto a major road. She sued the government under the Federal Tort Claims Act. Defendant United States of America (the "Government") has moved to preclude third-party damages. ECF No. 76. For the following reasons, the Government's motion is **DENIED**.

## I. BACKGROUND

### 1. Factual Background

The following facts are undisputed unless otherwise noted.

On March 25, 2022, a United States Postal Service van rear-ended a vehicle driven by Plaintiff Cherisse Wilson as she braked in preparation to make a right-hand turn. ECF No. 76-2, PageID.1045, PageID.1050;

ECF No. 76, PageID.1028. The accident occurred in Michigan. ECF No. 77, PageID.1069.

At the time of the accident, Wilson was driving a rented 2022 Chevrolet Traverse (the "Traverse"). *Id.* at PageID.1070, PageID.1074. Wilson was on her way to the Enterprise car rental office to exchange the Traverse for a different vehicle because the Traverse needed an oil change. ECF No. 76, PageID.1028–29; ECF No. 77, PageID.1070.

Wilson was renting the Traverse from Enterprise. *See* ECF No. 76-5. She was relying on a rental car because one of her two cars was in the shop and her daughter was borrowing the other. ECF No. 76, PageID.1030; ECF No. 77, PageID.1069.

The Enterprise rental agreement reflects that Wilson picked up the Traverse on February 25, 2022 in Troy, Michigan. ECF No. 76-3, PageID.1056. The agreement lists the "Anticipated Return" as the very next day, February 26, 2022, and reflects a "Billing Cycle" of "Calendar Day." *Id.* Enterprise billed the rental to Liberty Mutual Insurance Company. *Id.*; ECF No. 76-5, PageID.1061; ECF No. 76, PageID.1030; ECF No. 77, PageID.1070.

The document also reflects that Liberty Mutual would pay $1350.0 MAX at $45.00 a day. ECF No. 76-3, PageID.1056.

An Enterprise document titled "Rental Details" reflects that the return date for the Traverse was changed several times over the course of the rental. ECF No. 76-4, PageID.1059–60. Specifically, the return

date was changed to February 27, 2022, then to March 15, 2022, then to March 19, 2022, then to March 22, 2022, and lastly to March 25, 2022. *Id.*

Notes in the "Rental Details" document dated March 1, 2022, indicate "PMAX 3/26" and that the "[c]urrent authorized date is 3/15/22." ECF No. 76-4, PageID.1059.

Notes dated March 16, 2022 reflect "RENTAL TERMINATED ON: 3/19/22" and "Last Day Set --Repairs complete." *Id.* at PageID.1060.

A note dated March 25, 2022 reflects "CUST CAME IN AND IS GOING TO S/O CUST WILL COME IN MONDAY TO RW AS PMAX WILL BE REACHED TOMORROW AND DONT WANT HER TO LOSE A DAY. THEN WE WILL START HER CHARGES ON MONDAY." *Id.*

A note dated March 30, 2022 reflects "THE NUMBER OF DAYS WAS CHANGED FROM [23] TO [30] FOR BILL-TO ACCOUNT [LIBERTY MUTUAL/SAFECO INS SOC]." *Id.* (square brackets in original); ECF No. 77, PageID.1070.

The Traverse was registered in Alabama and bore an Alabama license plate. ECF No. 77, PageID.1074; ECF No. 78, PageID.1182.

On March 25, 2022, after the accident, Wilson returned the Traverse to Enterprise and the Rental Details log noted: NO DAMAGE DOCUMENTED. ECF No. 76-4, PageID.1060. She checked out a 2020 Dodge Durango as a replacement vehicle. ECF No. 76-4, PageID.1059. On March 28, 2022, Wilson returned the 2020 Dodge Durango. *Id.*

At the time of the accident, Wilson was living with her mother, Sarah Sims, in Oak Park, Michigan. ECF No. 76, PageID.1029; ECF No. 77, PageID.1069. On some weekends, Wilson stayed in Toledo, Ohio. ECF No. 76-2, PageID.1041. However, she described her Michigan residence as her "actual main residence" that she called "home." ECF No. 76-2, PageID.1049, PageID.1053.

It is undisputed that Wilson was a Michigan resident at the time of the accident, ECF No. 77, PageID.1069; ECF No. 78, PageID.1182, and she held a Michigan driver's license. ECF No. 76, PageID.1030; ECF No. 77, PageID.1069. At the time of the accident, Wilson owned two vehicles, both registered and titled in Michigan. ECF No. 76, PageID.1030; ECF No. 77, PageID.1077.

Wilson is insured by Liberty Mutual Insurance Company ("Liberty Mutual"). ECF No. 53, PageID.940. Sims is insured by USAA Casualty Insurance Company ("USAA") under a Michigan policy. *Id.* at PageID.941.

**2. Procedural Background**

Wilson filed the operative complaint on March 17, 2023. ECF No. 5. As relevant here, Wilson brought a claim of negligence against the Government. *Id.* at ¶¶ 12–19.

Wilson also brought suit against Liberty Mutual, USAA and Michigan Automobile Insurance Placement Facility ("MAIPF"). *Id.* at PageID.19. Subsequently, Citizens Insurance Company of the Midwest

("Citizens") substituted in for MAIPF. ECF No. 53, PageID.941. In her complaint, Wilson alleges that all three insurers have breached their contractual and/or statutory duties as no-fault personal injury protection ("PIP") insurers and seeks declaratory judgment in her favor. ECF No. 5.

On May 22, 2026, by stipulation, Wilson's complaint was dismissed against Citizens. ECF No. 90. On August 3, 2026, by stipulation, Wilson's complaint was dismissed against USAA. ECF No. 96.

On February 20, 2026, the Government moved to preclude third-party damages. ECF No. 76. Wilson responded on March 10, 2026, ECF No. 77, and the Government replied on March 17, 2026, ECF No. 78.

## II. STANDARD OF REVIEW

The Government's motion is styled as a motion to preclude third-party damages under MCL § 500.3135(2)(c). ECF No. 76, PageID.1024. Under MCL § 500.3135(2), "[f]or a cause of action for damages under subsection (1) or (3)(d), … (c) Damages must not be assessed in favor of a party who was operating his or her own vehicle at the time the injury occurred and did not have in effect for that motor vehicle the security required by section 3101(1) at the time the injury occurred." MCL § 500.3135(2)(c). In plain language, this statute means that a person operating their own vehicle is not entitled to seek damages for injuries if they do not maintain insurance on the vehicle at the time the injury occurred.

MCL § 500.3135(2)(c) is an affirmative defense, *Lanter v. Stephens*, No. 318358, 2015 WL 404744, at *1 n.4 (Mich. Ct. App. Jan. 29, 2015). Accordingly—as Plaintiff argues, *see* ECF No. 77, PageID.1066, PageID.1071, and as the Government does not dispute, ECF No. 78—the Government's motion is properly treated as a motion for summary judgment under Fed. R. Civ. P. 56. *See*, *e.g.*, *Douglas v. Sidhu*, No. 22-13109, 2024 WL 845830, at *2 (E.D. Mich. Feb. 28, 2024) (Steeh, J.).

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under governing law. See *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party

opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

Where the moving party has the burden of proof, such as a defendant on an affirmative defense, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation omitted). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999).

## III. DISCUSSION

"The FTCA [Federal Tort Claims Act] provides the exclusive waiver of sovereign immunity for suits sounding in tort against the United

States or its employees acting within the scope of employment." *Wilburn v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 771 F. Supp. 3d 950, 961 (E.D. Mich. 2025) (DeClercq, J.); *see* 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2679 (b)(1). Under the FTCA, "the district court applies local law to determine liability and to assess damages." *Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010).

As both parties recognize, *see* ECF No. 76, PageID.1031; ECF No. 77, PageID.1064, the applicable law is Michigan's No-Fault Act, which governs tort liability for injuries caused by ownership, maintenance, or use of motor vehicle, *see* MCL § 500.3135.

Michigan's No-Fault Act abolishes tort liability arising out of the ownership, maintenance, or use of a qualifying motor vehicle except as to a list of enumerated circumstances. MCL § 500.3135(3); *McCormick v. Carrier*, 487 Mich. 180, 189 (2010).

Wilson's complaint does not identify the subsections of Michigan's No-Fault Act under which she proceeds against the Government. ECF No. 5. Her allegations correspond to two subsections: First, MCL § 500.3135(1), which preserves tort liability for noneconomic loss caused by the ownership, maintenance, or use of a motor vehicle if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement. *See* ECF No. 5, ¶¶ 15–17. Second, MCL § 500.3135(3)(c), which preserves tort liability for allowable

expenses, work loss, and survivor's loss in excess of the No-Fault Act's limits. S*ee* ECF No. 5, ¶ 18.

The Government moves to preclude third-party damages under MCL § 500.3135(2)(c). ECF No. 76, PageID.1024.

Under MCL § 500.3135(2), "[f]or a cause of action for damages under subsection (1) or (3)(d), … (c) Damages must not be assessed in favor of a party who was operating his or her own vehicle at the time the injury occurred and did not have in effect for that motor vehicle the security required by section 3101(1) at the time the injury occurred." MCL § 500.3135(2)(c) (footnote omitted).[1]

---

[1] The Government's motion seeks preclusion of Wilson's third-party tort damages categorically. *See*, *e.g.*, ECF No. 76, PageID.1032 ("Specifically, MCL § 500.3135(2)(c) bars Wilson from an award of third-party damages at trial."); ECF No. 78, PageID.1183 n.3 ("If the Court precludes third-party damages, ending the third-party case, the Court could, in its discretion, decline to exercise continued supplemental jurisdiction over the first-party case, which involves complex state-law issues that have no federal nexus."). However, as is apparent from the plain text of the statute, MCL § 500.3135(2)(c) applies to "a cause of action under subsection (1) or (3)(d)." Subsection (1) relates to "tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL § 500.3135(1). Subsection (3)(d) relates to "Damages for economic loss by a nonresident. However, to recover under this subdivision, the nonresident must have suffered death, serious impairment of body function, or permanent serious disfigurement." MCL § 500.3135(3)(d). Thus, the limitation contained in § 500.3135(2)(c) does not cover liability for the kinds of damages described in subsection (3)(c):

Wilson argues that MCL § 500.3135(2)(c) does not apply because (1) she was not operating "her own vehicle"; (2) the Traverse was not required to be registered in Michigan; (3) the Government does not meet its burden of proof that the required security was not "in effect." ECF No. 77, PageID.1072–90.

Because the Court finds that Wilson was not operating "her own vehicle," it need not address Wilson's other arguments.

---

As the Government acknowledges, ECF No. 76, PageID.1032–33, for the damages bar of MCL § 500.3135(2)(c) to apply, the party must be operating "his or her own vehicle."

MCL § 500.3135(2)(c) "does not define the term 'own vehicle.'" *Kessel v. Rahn*, 244 Mich. App. 353, 355 (2001). Accordingly, Michigan courts look to the definition of "owner" contained in MCL § 500.3101(3)(l). *Id.* That subsection defines "owner" to include, as relevant here, "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." MCL § 500.3101(3)(l)(i).

As the Michigan Supreme Court has explained, under this definition "it is not necessary that a person *actually* have used the vehicle

"Damages for allowable expenses, work loss, and survivor's loss . . . ," MCL § 500.3135(3)(c). *See* MCL § 500.3135(2)(c). While neither side raises this point, the Court notes that even if the Government prevailed, the third-party case would not end.

for a thirty-day period before a finding may be made that the person is the owner. Rather, the focus must be on the nature of the person's right to use the vehicle." *Twichel v. MIC Gen. Ins. Corp.*, 469 Mich. 524, 530 (2004). Accordingly,

> Nothing in the plain language of M.C.L. § 500.3101(2)(g)(i) requires (1) that a person has at any time *actually used* the vehicle, or (2) that the person has *commenced* using the vehicle at least thirty days before the accident occurred. The statute merely contemplates a situation in which the person *is renting or using* a vehicle for a period that is greater than thirty days.
>
> Accordingly, if the lease or other arrangement under which the person has use of the vehicle is such that the right of use will extend beyond thirty days, that person is the "owner" from the inception of the arrangement, regardless of whether a thirty-day period has expired. For example, in the case of a lease running longer than thirty days, the plain language of the statute would make that person an "owner" from the inception of the lease; the person's status would not change simply because of the passage of time.

*Id.* at 530–31.

The Government argues that Wilson was the "owner" of the Traverse under MCL § 500.3101(3)(l)(i). ECF No. 76, PageID.1034. Specifically, the Government contends:

> Wilson's rental lasted a total of 31 days – she had the first car for 28 days and the replacement car for three days. Under *Twichel*, how long the rental actually lasted is not the controlling question. Rather, the Court must ask if Wilson had the "right to use" the car for more than 30 days. Here, Wilson did. The only reason why Wilson returned the first car on day

> #28 of the rental was because of a fluke – it needed an oil change. Wilson testified that she was not done with the rental. Wilson Dep. 63:25-64:8. Because Wilson had the "right to use" the rental car for greater than 30 days, as evidenced by the fact that her total rental period, in fact, lasted longer than 30 days, she qualifies as an "owner" under the statutory definition.

*Id.*

The record, however, does not support the Government's position. It is undisputed that Wilson rented the Traverse from Enterprise from February 25, 2022 to March 25, 2022, ECF No. 76-4, PageID.1059, a period of 28 days; that the "Rental Agreement Summary" lists a "Billing Cycle" of "Calendar Day," ECF No. 76-3, PageID.1056; that the return date was changed several times over the course of the rental, ECF No. 76-4, PageID.1059–60; and that prior to Wilson's exchange of the Traverse for the Dodge Durango, the return date was listed as March 25, 2022, *id.* at PageID.1060.

As of March 25, 2022, Wilson had rented the Traverse for only 28 days. Thus, Wilson did not "rent[]" the Traverse "for a period that is greater than 30 days." MCL § 500.3101(3)(l)(i).

But, as the Government urges, did Wilson have the "right to use the vehicle," in the language of *Twichel*, 469 Mich. at 530, for more than 30 days? The "Rental Summary" reflects that the latest listed return date was March 25, 2022—28 days after it was picked up. ECF No. 76-4, PageID.1060. Additionally, the Rental Agreement Summary listed the

original "Anticipated Return" as February 26, 2022. ECF No. 76-3, PageID.1056. Further, the section of the Agreement entitled "Summary of Charges" indicates the rental was to be billed to Liberty Mutual at a price of "$45.00/ Day" and "$1350.0 MAX/ Rental." *Id.* At a rate of $45 per day, a maximum rental fee of "$1350" works out to a maximum rental length of 30 days (1350/45 = 30).

The Government argues that Wilson "returned [the Traverse] only because it needed an oil change and not because she was done with it or because she no longer had the right to use it." ECF No. 78, PageID.1177. While it may be true that Wilson returned the Traverse for an oil change, the latest return date applicable to the Traverse was March 25, 2022. ECF No. 76-4, PageID.1060. Thus, there is no indication that, at the time of the accident, Wilson had the right to use the Traverse beyond March 25, 2022.

Next, the Government argues that Wilson's rental lasted 31 days because Wilson rented the Traverse for 28 days and the Dodge Durango for 3 days. ECF No. 78, PageID.1178. However, for the damages bar of MCL § 500.3135(2)(c) to apply, Wilson has to own the vehicle that she was operating at the time the injury occurred. MCL § 500.3135(2)(c). Thus, the Government may not add the rental time of the Dodge Durango to the rental time of the Traverse to show that Wilson rented the Traverse for more than 30 days. At the time of the accident, Wilson's right to use the vehicle ran through March 25, 2022, when the car was due to

be returned. At that point, Wilson had been using the car for 28 days. When Wilson brought the Traverse in, the agreement was effectively amended to substitute the Dodge Durango. Substituting a different vehicle did not extend her right to use the Traverse, which ended on the return date.

Next, the Government argues that Wilson "had the 'right to use' the rental for more than 30 days because she did, in fact, use the rental for more than 30 days." *Id.* The Government argues

> That the contract specified an "anticipated" return date that Wilson readily exceeded, along with the fact that the expected return date was continuously updated in the rental notes, proves that Wilson had the "right to use" the rental for an indeterminate and flexible period of time: as long as she needed it, which, in this case, turned out to be longer than 30 days.

*Id.* at PageID.1179.

Wilson responds that the same documents show the opposite: a "day-to-day replacement rental repeatedly extended in short increments." ECF No. 77, PageID.1072.

Drawing all reasonable inferences in Wilson's favor, the evidence indicates discrete extensions, but no arrangement that conferred a right to use the Traverse extending beyond 30 days. Additionally, the need for successive extensions itself indicates the absence of a right to use the Traverse for more than 30 days. And, as stated above, the Rental

Agreement Summary contemplates a maximum term of rental no greater than 30 days.

Again, drawing all reasonable inferences in Wilson's favor, the fact that Enterprise granted Wilson the right to use the Dodge Durango for an additional three days does not indicate that Enterprise granted Wilson the right to use the Traverse for 31 days at the time the injury occurred.

Finally, the Government's reliance on *Abraham v. State Farm Mut. Auto. Ins. Co.*, 342 Mich. App. 475 (2022), *see* ECF No. 76, PageID.1034; ECF No. 78, PageID.1179, is misplaced. In *Abraham*, the Court of Appeals of Michigan addressed an argument by Enterprise that the employer of the plaintiff, Nexen, "was not an 'owner' of the [vehicle] because each rental agreement was for a period of 28 days, not 30 days." 342 Mich. App. at 483. The Court of Appeals rejected this argument because it was undisputed that Nexen had rented the vehicle in successive 28-day agreements from June 2018 to January 16, 2019. *Id.* at 484. Accordingly, the court found that "the arrangement between Nexen and Enterprise gave Nexen use of the vehicle for approximately six months before the accident, a period significantly longer than the 30 days required by MCL 500.3101(3)(*l*)(*i*)." *Id.* at 484–85.

The holding in *Abraham* is of no help to the Government here. In *Abraham*, multiple 28-day agreements of a vehicle made Nexen the statutory "owner" of the vehicle. *Id.* Here, on the other hand, the

operative arrangement between Wilson and Enterprise at the time of the injury gave Wilson use of the Traverse for a total of only 28 days.

For the reasons above, the evidence, when viewed in the light most favorable to Wilson, does not support the Government's position that Wilson had a right to use the Traverse for more than 30 days. Thus, the facts do not establish that Wilson "owned" the vehicle that she was operating at the time the injury occurred. Accordingly, MCL § 500.3135(2)(c) does not apply to bar Wilson's damages under MCL § 500.3135(1). The Government's motion to preclude third-party damages must be **DENIED**.[2]

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant United States of America's motion to preclude third-party damages (ECF No. 76).

**SO ORDERED.**

Dated: August 18, 2026

s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

[2] Because the Court concludes that Wilson did not "own" the vehicle that she was operating at the time the injury occurred, the Court need not determine whether Wilson had in effect the security required by § 3101(1).